UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case Number 15-cr-20020

vs.                                            Honorable Gershwin A. Drain

ANTHONY NIXON,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR A *DAUBERT* HEARING AND EXCLUDING THE GOVERNMENT'S
EXPERT [#28]**

**I.    INTRODUCTION**

On February 24, 2015, a federal grand jury issued a four-count Superseding Indictment charging Defendant, Anthony Nixon, with violations of Title 18 U.S.C. § 1959(a)(5), Conspiracy to Commit Murder in Aid of Racketeering; Title 18 U.S.C. §§ 1959(a)(3); 2, Assault with a Dangerous Weapon in Aid of Racketeering; Title 18 U.S.C. §§ 924(c); 2, Use and Carry of a Firearm During, and in Relation to, a Crime of Violence and Title 18 U.S.C. § 922(g), Felon in Possession of a Firearm.

Presently before the Court is Defendant's Motion for a *Daubert*[1] Hearing, filed on May 18, 2015. The Government filed a Response in Opposition on June 8, 2015. An evidentiary hearing was held on June 30, 2015. For the reasons that follow, the Court will grant Defendant's Motion for a *Daubert* Hearing and will exclude the Government's expert.

## II.    FACTUAL BACKGROUND

The Government alleges that Defendant, along with others unnamed, were members and associates of the Vice Lords, a national gang founded in Chicago, Illinois. It further claims that on or about October 8, 2014 through October 10, 2014, Defendant plotted with other Vice Lord members to murder approximately five individuals. Defendant is also alleged to have assaulted five individuals with a dangerous weapon on October 10, 2014. The Government claims that the purpose of the Vice Lords enterprise is to (1) maximize profits from a variety of illegal activities, including murder, armed robbery and distribution of controlled substances, and (2) preserve and protect the power, territory, and profits of the enterprise through the use of intimidation and violence, including assaults and threats of violence.

The Government seeks to introduce Officer Albert Wyroba,[2] of the Chicago

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] At the time of filing Defendant's present motion, the Government's noticed expert witness was Detective Terrence Shields, also from the Chicago,

Police Department, as an expert witness during Defendant's upcoming trial. In its Response, the Government argues that Wyroba's expert testimony is necessary to explain the Vice Lords organization to the jury, including its structure, history, rules, customs and symbols. However, at the hearing, counsel for the Government explained that Wyroba's anticipated testimony was to focus on the common sayings or phrases and tattoos of the Vice Lords, and not on the history of the Vice Lords. While the Government maintains that Wyroba's testimony will be very narrow, it should be noted that its Expert Witness Disclosure identifies a much broader area of anticipated testimony including testimony regarding criminal street gangs in general. *See* Dkt. No. 33 at 2-6.

At the hearing, Wyroba testified that he has been a police officer for the Chicago Police Department for ten years. He has spent seven of those years investigating gang activity; predominantly the Vice Lords Nation gang. He has led the investigations in approximately fifty Vice Lord investigations, some being short term and others leading to Title 3 wiretaps. He estimates conducting physical surveillance of Vice Lord gang members about five hundred times, listened to roughly ten to twenty jail calls involving members, and conducted well over one hundred

---

Illinois Police Department. However, Detective Shields has informed the Government that he will be unable to testify at the upcoming trial in this matter, thus the Government recently identified Wyroba as an expert witness.

interviews of members. While he has been qualified as an expert in illicit narcotics distribution, this is the first time he has been proffered as an expert witness on gang activity.

He further explained that the Vice Lord Nation's national headquarters are located in Chicago, Illinois. He identified several Vice Lord symbols, which include the top hat, play boy bunny, five point star, five point crown and a champagne glass. He further testified that there are different factions including the conservative Vice Lords, the traveling Vice Lords, and the Insane Vice Lords. He indicated that factions are located outside of the Chicago area and mostly operate in the Midwest, including Minnesota, Tennessee, Wisconsin and Michigan. While he identified Michigan as a location with Vice Lord members, he admitted that he has no personal knowledge of Vice Lord membership in Detroit, nor does he have any knowledge of any Chicago member being connected to any members located in the Detroit area.

### III.  LAW & ANALYSIS

A party offering an expert's opinion bears the burden of establishing the admissibility of such opinion by a preponderance of the evidence. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 344, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Rule 702 of the Federal Rules of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must determine whether the expert's testimony meets three requirements: (1) the expert witness must be qualified by "knowledge, skill, experience, training or education," (2) the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue," and (3) the testimony is reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008).

In his present motion, Defendant argues that the Government's proposed expert witness is not qualified to testify as an expert about the Vice Lords gang activity in Detroit. Defendant further asserts that Wyroba's proposed testimony will not assist the trier of fact. Lastly, Defendant maintains that even if the Court were to find the anticipated testimony has limited probative value, it would be outweighed by the danger of unfair prejudice.

The Government maintains that Wyroba's "considerable expertise regarding the Vice Lords organization" is highly relevant, will assist the trier of fact and is reliable. The Government argues that Wyroba has "extensive expertise" with the Vice Lords organization. Specifically, the Government indicates in its Expert Witness Disclosure that Wyroba's testimony will be based on his training and experience, which includes:

- Ten years of employment with the Chicago police department;
- Current assignment to the Organized Crime Division's Gang Investigation Unit;
- Previous assignment to a tactical team in the 15th District and an area-wide gang unit;
- Investigation of street gangs in the city of Chicago for at least 8 of the past 10 years;
- Numerous short term and long term investigations of Vice Lord gang members;
- Participation in a year-long federal operation investigating the Vice Lords, which included a joint DEA Title III wiretap;
- Since 2008, involvement with numerous conspiracy investigations of both state and federal crimes;
- Served as affiant on numerous applications for search warrants, consensual overhears and tracker orders;
- Interviewed numerous gang members regarding gang activities, hierarchies and violence related to control of narcotics activities.

Dkt. No. 33 at 6-7. This mirrors Wyroba's testimony concerning his background at the June 30, 2015 hearing.

Defendant argues that while the Government's expert may have expertise

regarding Chicago street gangs, he had no part in the investigation of this case in Detroit, nor did he have any involvement with any of the alleged gang members who may testify. Defendant relies on *United States v. Norwood,* 16 F. Supp.3d 848 (E.D. Mich. 2014), and *United States v. Johnson*, No. 13-20764, 2014 WL 6686766 (E.D. Mich. Nov. 26, 2014), in support of his argument.

In *Johnson*, the district court excluded the Government's proposed expert witness under Rule 702. *Johnson*, 2014 WL 6686766, *3. The Government sought to introduce its expert's testimony on the Phantom Motorcycle Club's Detroit chapter. *Id*. at *1. However, the Government's expert was only knowledgeable about the Phantom's Columbus, Ohio chapter and its command structure. The expert had no knowledge of the command structures of other chapters nor had he ever been in another chapter's clubhouse. *Id*. at *2. The Government's expert had only been to Detroit twice; once to interview a confidential informant and later to testify before the grand jury. *Id*. In determining that the Government could not introduce the anticipated expert testimony, the district court concluded in relevant part that:

> His limited Phantoms background, involving primarily the peripheral Columbus Phantoms Chapter, does not qualify him as an expert under *Daubert* in this trial in Detroit, involving primarily Detroit members of the Detroit headquarters chapter.

*Id.* at *3.

In its Response brief, the Government fails to explain how Wyroba's training

and experience working for the Chicago Police Department qualifies him to testify as an expert about the local Detroit chapter of the Vice Lords. The Court did not glean any further insight on this issue at the hearing. While the Government argues that symbols and phrases of the Vice Lord Nation are universal, such a premise is hard to accept considering Wyroba's experience encompasses only the Chicago area Vice Lord members. It is not clear to this Court that Wyroba is qualified to testify that certain symbols and phrases are universal among factions located outside of Chicago when he has never been involved in any investigations of the Vice Lords outside of Chicago.

The Government cites to *United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000), for the proposition that police witnesses can be qualified as experts if they possess the requisite level of training and/or experience. The problem with relying on *Tocco* however is that the officer in that case "ha[d] extensive experience in the investigation of organized crime in the Detroit area, including . . . his role since 1990 as the Cosa Nostra coordinator for the Detroit division, and as liaison with other FBI offices and FBI headquarters." *Id.* at 419. Wyroba does not possess the "extensive experience in the investigation of organized crime in the Detroit area" similar to the expert in *Tocco*. *Id.* In fact, Wyroba has no knowledge of Vice Lord gang activity in Detroit.

The Government argues that the fact Wyroba has "more experience with the Chicago based Vice Lords should not preclude him from testifying about the Vice Lords organization's common origins, structure, symbols, and rules, which are found whether it operates in Detroit, Michigan; Chicago, Illinois; or another of the cities where the Vice Lords organization has a presence." Gov.'s Resp. At 14. However, the Government has offered no supporting evidence for this proposition, nor any case law in support of such an argument.

The other cases cited by the Government, including *United States v. Tindell*, No. 3:06-CR-30, 2007 WL 4223667 (E.D. Tenn. Nov. 28, 2007), and *United States v. Swafford*, 385 F.3d 1026 (6th Cir. 2004), are not on point with the issue before this Court. Both *Tindell* and *Swafford* dealt with the qualifications of police officers to testify as experts about drug distribution and the role of firearms in drug trafficking. *Tindell*, 2007 WL 4223667, at *1; *Swafford*, 385 F.3d at 1030. These cases are therefore distinguishable and offer no support for permitting Wyroba's testimony. *See United States v. Norwood*, 16 F. Supp.3d 848, 863 (E.D. Mich. 2014) (noting that while "the Sixth Circuit permits generalized drug sale and distribution testimony, the cases allowing gang experts regularly discuss the expert's familiarity with the subject gang.")(internal citations omitted).

Additionally, another case relied on by the Government, *United States v.*

*Mansoori*, 304 F.3d 635 (7th Cir. 2002) is distinguishable from the facts present here. In *Mansoori*, the Seventh Circuit Court of Appeals found no error with the district court's decision to allow a Chicago police officer to testify as an expert on the Traveling Vice Lords, who were engaged in narcotics trafficking in Chicago. *Id.* at 653-54. The officer, who was also involved in the investigation culminating in the prosecution of the defendants, was allowed to offer opinion testimony regarding the location that the Traveling Vice Lords distributed narcotics in Chicago. *Id.* at 653. Here again, unlike the circumstances present here, the expert at issue had first hand knowledge of the Chicago Vice Lords that were the subject of the indictment. *See also United States v. Archuleta*, 737 F.3d 1287 (10th Cir. 2013) (concluding that admission of a New Mexico Police Department officer's expert testimony on the New Mexico gang, Tortilla Flats, did not violate the Federal Rules of Evidence).

The Government's reliance on *United States v. Zerilli*, 128 F. App'x 473 (6th Cir. Apr. 13, 2005), an unpublished decision from this Circuit is also unhelpful in supporting the Government's position. The *Zerilli* court concluded that the district court did not abuse its discretion in admitting the gang expert testimony of an FBI agent concerning the Detroit Cosa Nostra family. *Id.* at 477. However, *Zerilli* provides no background information on the FBI agent and does not persuade this Court that Wyroba is qualified to testify about the universal nature of the Vice Lords

symbols and phrases when he has never investigated any members outside of the Chicago area. The case of *United States v. Rivers*, No. 3:11-00194, 2013 WL 3937026 (M.D. Tenn. Jul. 30, 2013) is similarly problematic for the Government. The *Rivers* court offered absolutely no analysis when it concluded that a gang expert's testimony on "[t]he methods and history of the Vice Lords gang are relevant and will assist the jury." *Id*. at *4.

As to whether Wyroba's testimony will assist the trier of fact, the Government argues that Wyroba's knowledge about the Vice Lords organization, structure and rules will help the trier of fact understand the evidence, including the testimony of a number of witnesses. It is beyond dispute that the Sixth Circuit has allowed police officers to testify as expert witnesses concerning organized crime, including gang activity. *Tocco*, 200 F.3d at 419 ("[E]vidence regarding the inner-workings of organized crime has been held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average.'").

However, here it is not clear to this Court that Wyroba's testimony will assist the trier of fact. At the hearing, the Government produced five exhibits with pictures of Defendant's tattoos. Wyroba testified that the tattoos were consistent with the symbols he is familiar with in connection with his investigations of the Chicago Vice Lords gang members. The Government intends to introduce the testimony of one of

Defendant's accomplices who is also a member of the Vice Lords gang in Detroit. As such, this witness can testify to the phrases and symbols used by the gang members in Detroit. Moreover, an average juror will be familiar with the concept of individual gang members committing crimes at the behest of the leaders of the gang in order to secure a higher position within the gang's hierarchy.

In summary, the Court concludes that Wyroba's anticipated expert testimony fails to meet the requirements for admissibility under Rule 702 because it is unreliable and will not assist the trier of fact. Additionally, in this Court's view, the proposed expert testimony concerning Defendant's tattoos would be unfairly prejudicial. Rule 403 permits this Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The pictures of Defendant's tattoos do not look like atypical tattoos evidencing gang membership. In fact, one of the tattoos is a picture of a baseball cap, while Wyroba testified that a top hat is a typical symbol of the Vice Lords gang in Chicago.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for a *Daubert* Hearing to

Exclude the Government's Expert [#28] is GRANTED.

    SO ORDERED.

Dated: July 2, 2015                    /s/Gershwin A Drain
                                               GERSHWIN A. DRAIN
                                               UNITED STATES DISTRICT JUDGE