**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,                                                    Case Number: 15-20020
                                                             HON. GERSHWIN A. DRAIN

v.

ANTHONY NIXON,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
IN COURT IDENTIFICATION AND SUGGESTIVE PHOTO
ARRAY [#36] AND GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO PROHIBIT USE
OF "FELON" AND SUPPRESS PRIOR RECORD [#49]**

**I.  INTRODUCTION**

On July 16, 2015, a federal grand jury issued a six-count Second Superseding Indictment charging Defendant, Anthony Nixon, with violations of: (a) Title 18 U.S.C. § 1959(a)(5), Conspiracy to Commit Murder in Aid of Racketeering; (b) Title 18 U.S.C. §§ 1959(a)(3), Assault with a Dangerous Weapon in Aid of Racketeering; (c) Title 18 U.S.C. §§ 924(c), Use and Carry of a Firearm During, and in Relation to, a Crime of Violence; (d) Title 18 U.S.C. § 922(g), two counts of Felon in Possession of a Firearm, and (e) Title 18 U.S.C. § 922(j), Possession of a Stolen Firearm.

Presently before the Court are Defendant's Motion to Suppress in Court Identification and Suggestive Photo Array[#36], filed on June 12, 2015, and Defendant's "Motion *in Limine* to Prohibit Use of 'Felon' in the Felon in Possession Charge and to Suppress Prior Record if Defendant Nixon Elects to Testify" [#49], filed on July 24, 2015.  The Government filed a response to both motions, as well as a document titled "Supplemental Authority" pertaining to the use of "felon" at trial.  A

hearing was held on October 8, 2015, at which all parties were present and heard.

For the reasons that follow, the Court: (1) denies Defendant's Motion to Suppress in Court Identification and Suggestive Photo Array, and (2) grants in part and denies in part Defendant's "Motion *in Limine* to Prohibit Use of 'Felon' in the Felon in Possession Charge and to Suppress Prior Record if Defendant Nixon Elects to Testify."

## II. FACTUAL BACKGROUND

The Government alleges that Defendant, along with unnamed others were members and associates of the Vice Lords, a national street gang that is involved in murder, robbery, and other violent crime. It further claims that on or about October 8, 2014, through October 10, 2014, Defendant plotted with other Vice Lord members to murder approximately five individuals in the city of Detroit as retribution for the murder of an individual associated with a Vice Lord member. The murder was to be carried out by Defendant, with the assistance of another Vice Lord member, Ryman Randall.

It is alleged that in the early morning hours of October 10, 2014, Defendant and Randall traveled to a single family home in Detroit. Randall wore a mask, but Defendant left his face uncovered. Once at the home, they encountered a victim [Victim #1] outside the home who had just pulled into the driveway. Defendant and Randall followed Victim #1 as she exited her vehicle, forced their way into a side door, and held the residents at gunpoint. Defendant was in the house, while Randall remained at the doorway. A two-year child was in the home and began crying. In reference to the plan for retribution, Defendant told the residents: "You know who killed my cousin."

The Government further alleges that, at some point, Defendant realized the targets of the

murder plot were not at home, but he also noticed things of value that could be robbed from the family. He and Randall began gathering cellular phones and identification from the victims, as well as a minor amount of cash and flat-screen televisions. During the course of the robbery, Defendant said, "F**k a mask, I don't need a mask and I don't give a f**k. I know where y'all live. I got phones and Ids. I'll come back and shoot this bitch up. Y'all got me? And don't try to call the police."

The Government contends that Defendant then ordered another victim [Victim #2] to accompany him throughout the remainder of the house so that Defendant could determine if there was anything else of value to be taken. After gathering the items, Defendant and Randall fled. Officers responding to the scene, however, noticed their vehicle and began pursuing it. The vehicle eventually hit a pole, and both Defendant and Randall ran away from the scene. Randall was quickly apprehended, but Defendant got away. Randall was charged with 18 counts in state court and his guideline range began at roughly twenty years, plus a mandatory 5 years for a second offense felony firearm. Thereafter, Randall reached out to the Government and identified Defendant as his Vice Lord partner who participated in the robbery of the home in Detroit.

Defendant denies that he is a current member of the Vice Lords. He claims that Randall knew him from prison and knew that Defendant had been a Vice Lords member as a teenager. Defendant further denies that he robbed anyone with Randall, and Defendant denies he was involved in the home invasion in any capacity. Randall has been offered a significant lesser sentence in exchange for his testimony against Defendant, which Defendant maintains is the reason Randall has implicated Defendant in this case.

Based on Randall's information, Bureau of Alcohol, Tobacco and Firearms Special Agent

Richard Buyse was able to identify Defendant and locate a driver's license photograph of Defendant on file with the Michigan Secretary of State. From a file of hundreds of drivers license photographs, Agent Buyse created a photo array of six individuals. Agent Buyse showed the photo array lineup to three of the robbery victims, including Victim #1 and Victim #2. Agent Buyse presented the photo array to each victim individually while the other victims waited in another room. Agent Buyse did not suggest that the assailant was included amongst the photo array. Rather, he asked each victim if he or she saw anyone in the photo array who they recognized, and he then inquired from where they recognized the person identified. Victim #1 and Victim #2 identified Defendant as the person who robbed them. A third victim, who said he did not see the robber very well, indicated that a different individual in the photo array was "maybe" the person who robbed them.

### III.    LAW & ANALYSIS

#### A.    Motion to Suppress In-Court Identification and Suggestive Photo Array

Defendant argues that the Government denied his due process rights by using an impermissibly suggestive photo array to obtain his identification. He moves the Court to suppress the photo array identification and any in court identification based upon the suggestive photo array.

The Due Process Clause is violated when a district court admits identification evidence procured through a procedure that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). The rationale behind this rule "is not to ensure the reliability of identification evidence, but to deter malfeasance by investigating officers." *United States v. Watson*, 540 F. App'x 512, 515 (6th Cir. 2013) (citing *Perry v. New Hampshire*, 132 S. Ct. 716, 726 (2012)). As such, "identification evidence produced under potentially suggestive circumstances will not be suppressed unless there

is improper behavior by state officials giving rise to the suggestiveness." *Id.* (citing *Perry*, 132 S.Ct. at 721).

The Sixth Circuit requires district courts to perform a two-step inquiry to determine whether identification evidence should be suppressed. *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005); *Watson*, 540 F. App'x at 515. The defendant must first show that the identification procedure was unduly suggestive. *Sullivan*, 431 F.3d at 985. Mere suggestiveness is not enough. *Id.* Rather, in order to warrant suppression, "the identification procedure must be 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *United States v. Washington*, 714 F.3d 962, 967 (6th Cir. 2013) (citing *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004) (quoting *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986)). When determining whether an identification procedure is unduly suggestive, the district court should consider several factors, including the size of the photographic array, the manner of its presentation by the officers, and the details of the photographs themselves. *United States v. Stamper*, 91 F. App'x 445, 459 (6th Cir. 2004) (citing *United States v. Sanchez*, 24 F.3d 1259, 1262-63 (10th Cir. 1994)).

If the defendant meets his burden of showing the identification procedure was unduly suggestive, the district court must determine whether "the identification was not otherwise reliable under the totality of the circumstances." *Watson*, 540 F. App'x at 515. Reliability is considered in light of "such factors as: (1) the witness' opportunity to observe the criminal at the time of the crime; (2) the witness' degree of attention at the time of this observation; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty that the witness demonstrated when confronting the defendant; and (5) the length of time between the crime and the confrontation." *Stamper*, 91 F. App'x at 460 (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1071 (6th Cir. 1994)). *See*

5

*also Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

Here, Defendant has failed in his burden of demonstrating that the photo identification procedure was unduly suggestive. Defendant's entire argument that the identification procedure was unduly suggestive is as follows: "No defense attorney was present, the photo array was shown to the complainant [eleven] weeks after the incident, the complainant was a stranger to the Defendant, and the complainant was under extreme stress in the middle of the night with little visibility." A review of Sixth Circuit case law compels the conclusion that, on this record, the photo array was not unduly suggestive and did not run afoul of the Due Process Clause.

In *United States v. Washington*, the Sixth Circuit concluded that the defendant failed to meet his burden demonstrating an unduly suggestive identification procedure. 714 F.3d at 967-68. The defendant in *Washington* argued that the police used photographs of darker-skinned individuals alongside his photograph because the victim "described his attacker as having light brown skin." *Id*. at 967. The *Washington* defendant also complained that "the difference in skin tone is exacerbated by a glare from the camera flash that appear[ed] on his face." *Id*. While noting that the *Washington* defendant had lighter skin than some of the other individuals depicted, the court nonetheless concluded that "his skin tone is very close to the men in photos four and five, and there is not a drastic difference between defendant's skin tone and the remaining photos." *Id*. The Sixth Circuit also found credible the police officer's testimony that "he took care to ensure that the defendant shared substantial similarities with the other depicted men." *Id.* The *Washington* court went on to find that:

> This care is reflected in the photo array, as it reveals five African-American men in addition to the defendant, at least four of whom appear to have some sort of facial hair, and all five of whom appear to be around the same age as the defendant.

6

\* \* \*

> The officer who prepared the array also testified that he specifically chose photographs with similar glares to the one in defendant's photograph, and at least four of the remaining five photographs do have a similar glare. Contrary to defendant's argument, it simply does not appear upon review that this identification procedure was so impermissibly suggestive that there was a substantial likelihood of irreparable misidentification.

*Id.*

In *Sullivan*, the Sixth Circuit rejected a defendant's contention that his due process rights were violated based on an unduly suggestive photo array because he was the only individual with blue eyes and "a majority of the witnesses described the robber as having blue eyes." 431 F.3d at 984-85. The *Sullivan* court affirmed the district court's conclusion that the "photo array did not improperly single out the defendant; . . . the eye color is not easily ascertained by looking at either array." *Id.* at 985.

Here, the photo array included six color photographs with identical backgrounds. All six of the individuals in the photographs had similar facial hair, specifically a thin mustache and a goatee, similar hair styles, and the same eye color. Four out of the six individuals look to be roughly the same age. The other two look slightly older. All of the individuals depicted had similar facial expressions and similar builds. While the Court disagrees with the Government that all six individuals were of similar complexion, Defendant's skin tone is similar to two of the individuals depicted. Moreover, there is no evidence that Agent Buyse directed the witnesses' attention to any particular photograph, and he separated the witnesses to ensure their identifications were not tainted or influenced by each other.

There is no support for Defendant's contention that he was somehow improperly singled out by Agent Buyse's photo array. *See, e.g.*, *Watson*, 540 F. App'x at 516 (affirming the district court's

decision to allow the identification into evidence where "[t]he five filler photos in both arrays shared many characteristics with the photos of Watson used in each, that is, Watson's photo did not stand out."); *Sanchez*, 24 F.3d at 1263 ("[W]e are not persuaded that the differences in Defendant's picture would necessarily lead the eye of the unguided viewer to his photograph given that all of the depicted persons are very similar in their physical appearance.")

Because Defendant cannot meet his burden to show an unduly suggestive photo array, the Court need not address whether the identification was otherwise reliable. *Washington*, 714 F.3d at 968. Based on the record before the Court, however, it is beyond dispute that even if Defendant could meet his burden showing an unduly suggestive photo array, the identifications were reliable upon consideration of the totality of the circumstances. Victim #1 and Victim #2 were both personally confronted by Defendant in the early morning hours of October 10, 2014. They were able to view him over a period of time. In fact, Victim #2 was ordered to accompany Defendant while he went through the house looking for items to steal. Victim #1 described Defendant as a black male with a brown complexion, possibly having a chipped tooth and a cocky build. *See* #41, Ex. A. Victim #2 described Defendant as a black male, about 25 years of age, with a thin black moustache and a thin goatee. Victim #2 also described Defendant as about 5'9 and 200 pounds. The photo array identifications took place about eleven weeks after the robbery.

Given these circumstances, the identifications do not present a substantial likelihood of irreparable misidentification. Defendant's complaint that there was no defense attorney present is without merit. Defendant was not charged at the time of the photo array, and even if he had been charged, an accused has no right to have counsel present during a post-indictment photo array. *United States v. Ash*, 413 U.S. 300, 317-18 (1973); *see also Van v. Jones*, 475 F.3d 292, 311 (6th

Cir. 2007) (holding that "a photographic display cannot fairly be considered a 'critical stage' of the prosecution.").

For the foregoing reasons, the Court denies Defendant's Motion to Suppress in Court Identification and Suggestive Photo Array [#36].

### B. Motion to Prohibit Use of "Felon" in the Felon in Possession Charge and to Suppress Prior Record if Defendant Elects to Testify

#### 1. Prohibition on any Reference to Felon

Defendant first requests that the Court order that the word "felon" not be used before the jury, including at jury selection, in the jury instructions, and otherwise at trial in conjunction with the two counts charging that Defendant violated 18 U.S.C. § 922(g)(1). Defendant contends that the word "felon" invokes a negative connotation and cultural biases, as felons are thought of as second class citizens. Defendant further requests that the jury simply be told that Defendant is "ineligible" to possess a firearm, thereby limiting the case the Government must prove to the issue of whether Defendant possessed a firearm (and eliminating the need to prove that Defendant is a "person–who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," *i.e.*, a felony). 18 U.S.C. § 922(g)(1) provides:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> \*    \*    \*
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

As the supplemental authority submitted by the Government details, the Sixth Circuit

9

recently addressed the issue of whether a court must exclude any reference to "felon" when a defendant is charged with violating Section 922(g)(1). In *United States v. Ray*, the court held that the district court did not abuse its discretion in allowing the use of the word "felon" at trial where a violation of Section 922(g)(1) was alleged. No. 14-2159, 2015 WL 5573749, at *12 (6th Cir. Sept. 23, 2015). The *Ray* court noted in dicta, however, that: (a) the Sixth Circuit "has not explicitly addressed the unfair prejudice that may arise solely as a result of the repeated use of the word 'felon' in reference to a defendant," but (b) "courts in [the Sixth] Circuit have recognized the potential unfair prejudice that may arise as a result of trying a charge under § 922(g) with other charges arising from the same underlying conduct." 2015 WL 5573749, at *8.

The Sixth Circuit further recognized "the proven impact of implicit biases on individuals' behavior and decision-making" and noted that "[s]ocial scientists have examined extensively the theory of implicit bias in recent decades, especially as it relates to racial bias." *Id.* (citations omitted). The Sixth Circuit then stated that, "because the word 'felon' is not used in the statute, there is no reason a court could not use alternative language—such as the language of the statute—instead of labeling the defendant a 'felon' or referring to a charge under § 922(g) as 'felon in possession.'" *Id.* at *9 The Sixth Circuit further stated, "if a court conducted a Rule 403 analysis and concluded that the use of the term 'felon' or 'felon in possession' was unfairly prejudicial, we see no reason such a ruling should not be upheld." *Id.*

In fact, this Court previously granted a similar motion when a defendant agreed to stipulate to the fact that he had a previous conviction for a crime punishable by imprisonment for a term exceeding one year. In that case, this Court agreed to exclude the name and nature of his prior felony conviction throughout trial. *See United States v. Tutt*, No. 13-CR-20396, 2013 WL 6062035,

at *4 (E.D. Mich. Nov. 15, 2013) (citing *Old Chief v. United States,* 519 U.S. 172, 185, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), to note that *Old Chief* "highlighted the particular danger to Defendant because his prior weapons offense conviction creates a risk that he will be convicted on a propensity inference alone."). Significantly, at the October 8, 2015, hearing, the Government stated that, in light of *Ray*, it would not object to precluding the use of the term "felon" with respect to the "felon in possession" charge against Defendant and instead using the language of § 922(g)(1) (*i.e.*, a "person–who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year"). Defendant also stated that he would like the statutory language used rather than the term "felon." In light of the parties' positions at the hearing, the Sixth Circuit's ruling in *Ray*, as well as this Court's finding that the term "felon" could be unfairly prejudicial to a defendant (*see Tutt, supra*), the Court holds that the term "felon" shall not be used in the course of any trial proceedings in this case, including, without limitation, during jury selection, in the jury instructions, and during opening statements, questioning of witnesses, and closing arguments.

The Court is not persuaded, however, that it should grant Defendant's request that the jury be told simply that Defendant is "ineligible" to possess a firearm (rather than that he is a felon or has been convicted of a crime punishable by imprisonment of more than a year). As the Government has argued, simply telling the jury that Defendant is "ineligible" to possess a firearm would eliminate from the jury's consideration one of the elements of the crime (*i.e.*, Defendant is a "person–who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year").

In *United States v. Underwood*, No. 95-5441, 95-5442, 1996 WL 536796 (6th Cir. Sept. 20, 1996) (unpublished), a case that is similar to this case, the Sixth Circuit affirmed the district court's

rejection of a defendant's request that the issue of possession be submitted to the jury with no mention of his status as a felon. *Id.* at *6 (citing *United States v. Barker,* 1 F.3d 957, 959 (9th Cir. 1993) (agreeing with the district court denial of defendant's bifurcation motion because granting the request "would require omitting an element of the charged offense from the jury instructions" and adopting the rule in *Barker* that a "district court may not eliminate an element of the crime charged."). Likewise, as the Sixth Circuit stated in the *Ray* decision, "it is still the Government's burden to prove each element of the offense and, likewise, generally the jury must make a finding as to each element, even where there is a stipulation to the elemental facts." *Ray*, 2015 WL 5573749, at *8 (citing *United States v. Jones,* 108 F.3d 668, 674–76 (6th Cir. 1997)).[1]

For the reasons set forth above, the Court denies Defendant's request to inform the jury that he is "ineligible" to possess a firearm, or words to that effect, rather than using the statutory language that he had a prior conviction for a crime punishable by imprisonment for a term exceeding one year.

---

[1] Other Circuits also have concluded that a district court cannot remove the element of prior felony conviction from the jury's consideration. *See, e.g.,United States v. Chevere*, 368 F.3d 120, 121-22 (2d Cir. 2004) (emphasis in original) (even if a defendant stipulates that he has a prior felony conviction, thereby preventing the jury from hearing about the *nature* or *underlying facts* of the conviction, "in a prosecution under § 922(g)(1), there are no circumstances in which a district court may remove the element of a prior felony conviction entirely from the jury's consideration by accepting a defendant's stipulation to that element."); *United States v. Clark*, 184 F.3d 858, 867 (D.C. Cir. 1999) (noting that the argument put forth by Defendant here, "might well have deprived the prosecution of its rightful opportunity, recognized in *Old Chief,* 'to convince the jurors that a guilty verdict would be morally reasonable.' The effect of those alternatives would have been to keep from the jury the fact that the reason it was unlawful for [the defendant in that case] to possess a gun was that he was an ex-felon. As we noted in *United States v. Mangum,* when a jury is not "told all the elements of the crime, it may, justifiably, question whether what the accused did was a crime. . . . Possession of a firearm by most people is not a crime. . . . Doubt as to the criminality of [the defendant's] conduct may influence the jury when it considers the possession element.") (internal citations omitted).

### 2. Use of Defendant's Criminal History

Defendant also has moved the Court to suppress his prior record if he decides to testify. The Government contends that Defendant's request is premature because it is unclear what the content of Defendant's testimony will be (if he testifies at all). Until then, the Government contends, the Government does not know what, if any, of Defendant's criminal history the Government would seek to utilize for impeachment purposes. At the hearing, Defendant expressed his desire for a ruling on his motion at this time. As the Court was inclined to rule sooner rather than later, the Court reviewed the LEIN report on Defendant attached to Defendant's motion. *See* #49, Ex. A.

The Court has reviewed the LEIN report provided, however, the Court was unable to decipher the relevant criminal history of Defendant for purposes of determining whether to suppress any or all of Defendant's criminal history. In light of the foregoing, especially without knowing what Defendant's testimony might be, the Court finds that it does not have enough information to consider all of the following relevant factors for purposes of determining Federal Rule of Evidence 609 admissibility: (1) the impeachment value of the prior conviction; (2) the length of time between the conviction and Defendant's subsequent conduct; (3) the similarity of the past crime and the offense charged; (4) the significance of Defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Moore*, 917 F.2d 215, 234 (6th Cir. 1990); *Gordon v. United States*, 383 F.2d 936 (D.C. Cir. 1967).

For the reasons set forth above, the Court shall defer a decision regarding Defendant's request to suppress his criminal history in the event he testifies. Accordingly, the Court denies without prejudice Defendant's request to suppress his criminal history in the event he testifies at

trial. At the request of either party, and upon receiving additional input from the parties regarding the date(s) and nature of any prior felony(ies) for which Defendant has been convicted, the Court will revisit whether to suppress Defendant's criminal history if Defendant testifies.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress in Court Identification and Suggestive Photo Array [#36] is DENIED, and Defendant's "Motion *in Limine* to Prohibit Use of 'Felon' in the Felon in Possession Charge and to Suppress Prior Record if Defendant Nixon Elects to Testify" [#49] is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated: October 14, 2015  s/Gershwin A. Drain
Detroit, Michigan  GERSHWIN A. DRAIN
United States District Judge